IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MONICA POMPEO,**

      **Plaintiff,**

v.                                                    Case No.: CIV 13-0833 MCA/ACT

**BOARD OF REGENTS OF
THE UNIVERSITY OF NEW MEXICO,
CAROLINE HINKLEY, in her individual capacity, and
SUSAN DEVER, in her individual capacity,**

      **Defendants.**

**<u>FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FIRST AMENDMENT,
DAMAGES AND FOR DECLARATORY RELIEF</u>**

Plaintiff, Monica Pompeo, by and through her attorneys, Gorence & Oliveros, P.C. (Louren Oliveros, Robert J. Gorence and Andrea D. Harris), hereby submits this First Amended Complaint for violation of the United States Constitution, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-02.

**THE PARTIES**

1.      Plaintiff Monica Pompeo currently resides and maintains permanent domicile in Bernalillo County, New Mexico.

2.      Defendant Board of Regents of the University of New Mexico ("UNM") is a public employer, a body corporate and, pursuant to N.M.S.A. § 21-7-3, responsible for management and control of UNM, and has the authority to sue and be sued.

3.      Defendant Caroline Lawson Hinkley is an individual who worked in Bernalillo County, New Mexico, for the University of New Mexico at all times during the events described in this Complaint.  Defendant Hinkley is an adjunct professor at UNM.

1

4. Defendant Susan Dever is an individual who worked in Bernalillo County, New Mexico, for the University of New Mexico at all times during the events described in this Complaint.

5. Defendant Dever is the Department Chair of the Cinematic Arts Department at UNM. She is an administrator for UNM and Defendant Hinkley's supervisor.

6. At all material times, Defendant Hinkley and Defendant Dever acted individually and as employees and/or agents of UNM.

## JURISDICTION AND VENUE

7. Original jurisdiction and venue were proper in the Second Judicial District Court, State of New Mexico pursuant to NMSA § 38-3-1A and Article VI, Section 13 of the New Mexico Constitution where this case was originally filed.

8. Defendants removed this case to this Court pursuant to 28 U.S.C. § 1441, and jurisdiction and venue are proper in that this Court has jurisdiction pursuant to 28 U.S.C. § 1441 and 42 U.S.C. § 1983 and 1988.

9. Upon information and belief, all Defendants either reside or conduct their primary business in Bernalillo County, New Mexico. Further, all acts complained of occurred in Bernalillo County, New Mexico.

## GENERAL FACTUAL ALLEGATIONS

10. Plaintiff was a part-time student at the University of New Mexico during the 2012 Spring Semester. During that semester, she was enrolled in a class entitled "Images of (Wo)men: From Icons to Iconoclasts," (hereinafter referred to as "Images of Women") taught by Adjunct Professor Caroline Lawson Hinkley. The class began January 17, 2012.

11. The Images of Women class was an upper-division, graduate level course. It was

classified as a restricted class, meant for an older, mature group of students, and was considered an R-Rated course.

12. Within Defendant Hinkley's syllabus for the Images of Women class, titled "Contract for a Restricted Class," students were informed that the "intellectual project of this challenging course is for us to investigate and consider, with open minds, representations of a plethora of genders and sexualities."

13. The Images of Women syllabus also provided that class content would include:

> a wide range of themes, discuss oppressive and transgressive gendered images and sounds; . . . queering theories of representation; gender as genre and other feminist forms; . . . the gay gaze and the lesbian look; . . . partial/resistant viewing practices; gendering cultural and historical theories of reception; . . . and 'aberrant' desires.

14. The syllabus alerted students to the possibility of "incendiary class discussions" which "might not make you comfortable[,]" but that "it's quite clear that we do not expect anyone to necessarily agree with the positions and arguments advanced in our work. There's controversy built right into the syllabus, and we can't wait to hash out our differences."

15. Participation in the form of student speech in the Images of Women class was mandatory and constituted 5% of one's grade. Specifically, students were informed to take part in a "combination of active contribution, active listening, note taking, asking questions for clarification, raising themes for further contemplation, arguing a point, tossing around a new concept, admitting confusion; asking a classmate to re-phrase or follow-up on an idea, and so on."

16. On February 21, 2012, pursuant to a required course assignment, Ms. Pompeo submitted a critique of a film entitled *Desert Hearts*, a movie depicting a lesbian love story. The paper was submitted directly to Defendant Hinkley in order to be graded. The grade for the

paper was to be part of her overall course grade.  The critique was not published or circulated to the class or greater university.

17.     *Desert Hearts* is an R-rated film and includes adult themes, adult activity, profane language, intense or persistent violence, and sexually-oriented nudity.

18.     In her critique, Ms. Pompeo wrote about:

a) the actresses' "perverse attraction to the same sex;"

b) that "it is a well-known fact that female reproductive systems are in high gear between the ages of 15 and 35, so perhaps she realizes that her reproductive days are declining swiftly[;]"

c) that a "drowned" marriage implies death because "lesbianism is a very death-like state as far as its inability to reproduce naturally[;]"

d) that when lesbians bathed that, "the only signs of potency in the form of the male cock exist[ed] in the emasculated body" of someone else; and

e) the "film can be viewed as entirely perverse in its desire and attempt to reverse the natural roles of man and woman in addition to championing the barren wombs of these women."

19.     On March 6, 2012, Defendant Hinkley returned the graded critiques to all of the students in the Images of Women class except Ms. Pompeo, who was informed that she had to attend a meeting on March 8, 2012.  Ms. Pompeo asked for her paper to be returned so that she could review it prior to the March 8, 2012, meeting, but Defendant Hinkley refused to return the paper.

20.     Defendant Hinkley canceled the scheduled meeting via email at 10:07 p.m. on March 7, 2012, and informed Ms. Pompeo that she could pick up her paper from the Cinematic

Arts office and "ponder the responses" Defendant Hinkley had written on her paper over Spring Break.  Defendant Hinkley informed Ms. Pompeo that she would meet with Ms. Pompeo after Spring Break.

21.  Defendant Hinkley, in handwritten notes on Ms. Pompeo's paper, wrote that her speech was inflammatory and offensive and disparaged her language concerning a "perverse attraction to the same sex" and a "barren womb."

22.  Defendant Hinkley stopped reading Ms. Pompeo's paper after only reading two pages.  Defendant Hinkley returned the critique to Plaintiff and refused to assign a grade.

23.  On March 20, 2012, Ms. Pompeo met with Defendant Hinkley to discuss her paper.  Despite the representations in the Contract for a Restricted Class, Defendant Hinkley rejected Ms. Pompeo's opinions, viewpoints and conclusions in her *Desert Hearts* paper, solely on the basis of its content and accused Ms. Pompeo of uttering "hate speech," which could incite violence and endanger people's lives.

24.  After refusing to grade the paper, Defendant Hinkley told Ms. Pompeo that it would be in her best interest not to return to her class.

25.   Ms. Pompeo responded that she wanted to attend the class.

26.  Prior to Defendant Hinkley's refusal to grade Ms. Pompeo's *Desert Hearts* paper, Ms. Pompeo had received A's or A-'s on all other papers written in her Images of Women class.

27.  After Ms. Pompeo submitted the *Desert Hearts* paper, she was treated more harshly by Defendant Hinkley.

28.  Ms. Pompeo attempted to contact Defendant Hinkley numerous times to discuss her paper after Spring Break.  Defendant Hinkley never responded again to discuss Ms. Pompeo's attendance or performance in the film class.

29. Defendant Hinkley had no legitimate or lawful reason for the refusal to grade Plaintiff's *Desert Hearts* paper or refusing to allow Ms. Pompeo to continue to attend the class.

30. Defendant Hinkley's actions were based on her sole disapproval of the views expressed in Ms. Pompeo's *Desert Hearts* critique paper.

31. After submitting a letter to UNM administrators, on March 22, 2012, Ms. Pompeo went to the UNM President's office and met with Jane Slaughter, UNM Provost, and Robert Burford, Dean of Students, to discuss Defendant Hinkley's refusal to meet with Plaintiff, the First Amendment violation she suffered and that the violation was on-going because of her inability to regain access to the Images of Women class.

32. On March 23, 2012, Ms. Pompeo met with Defendant Dever and James Stone, an Assistant Professor in the Cinematic Arts Department, to discuss Ms. Pompeo's paper and Defendant Hinkley's continued refusal to meet with Ms. Pompeo. Ms. Pompeo was informed that the use of the word "barren" was inappropriate and very offensive. Mr. Stone also objected to the use of the word "cock" in Ms. Pompeo's paper and said the word was not allowed to be used in his individual classroom. Ms. Pompeo was informed that the use of the words "barren" and "cock" were not appropriate in academic writing.

33. Ms. Pompeo was ultimately forced to withdraw from the class based on the content of her *Desert Hearts* paper, in direct violation of her First Amendment right to express herself.

34. After being pulled from Defendant Hinkley's class, Plaintiff was forced to take an Independent Studies Student course in place of the Images of Women course. The new course was taught by Defendant Dever.

35. Defendant Dever ratified Defendant Hinkley's actions and Ms. Pompeo's

expulsion from the Images of Women course, as well as the unlawful and pretextual reasons for Defendant Hinkley's actions.

36. Defendant Dever has full and complete actual knowledge of Defendant Hinkley's actions and the basis for those actions.

37. On April 9, 2012, Defendant Dever admonished Plaintiff not to use certain language to convey particular points and not to use the word "barren." Specifically, in an email on April 9, 2012, Ms. Pompeo wrote that she intended to use the word barren in a rewrite of her paper. Defendant Dever responded, "you can make your choices, certainly, but after so much conversation about the word, we know that, as I said in my e-mail and our meeting, your choices have consequences."

38. On that same date, Ms. Pompeo met with Associate Dean Holly Barnet-Sanchez to discuss the reason why she was not allowed to participate in the film class. During that meeting, Associate Dean Barnet-Sanchez told Ms. Pompeo for the first time that the reason that Ms. Pompeo was not allowed to attend the Images of Women class was because Defendant Dever and Defendant Hinkley advised that Ms. Pompeo was "very disruptive" and "disrespectful to the professor and the students."

39. On April 23, 2012, Ms. Pompeo met with Kim Kroeppel, Interim Dean of Students, to discuss Defendant Hinkley's and Defendant Dever's treatment of Ms. Pompeo.

40. On April 24, 2012, Ms. Pompeo met with the Interim Dean of Fine Arts, William Gilbert, to discuss how her speech had been curtailed by Defendant Hinkley and Defendant Dever.

41. On April 27, 2012, Ms. Pompeo met with Ivan Alex Paramo, a UNM employee in the Provost office, to discuss her inability to speak in class.

42. On April 29, 2012, as a result of Ms. Pompeo being expelled from her Images of Women class, she filed a grievance with the University of New Mexico and sought a refund of her tuition and fees for the class, as well as an apology from UNM.

43. On approximately May 16, 2012, UNM held a hearing on Ms. Pompeo's grievance. UNM's presence at the hearing on Ms. Pompeo's grievance included Defendant Hinkley, Defendant Dever, and Provost Mike Dougher.

44. Defendant Hinkley admitted that she never finished reading Ms. Pompeo's paper because she disagreed with her viewpoint and values.

45. Also during the hearing, Defendant Hinkley stated for the first time that Ms. Pompeo's paper did not include enough research or footnotes and that Ms. Pompeo made too many comments in class.

46. UNM refunded Ms. Pompeo's tuition for the Images of Women class on May 18, 2012.

47. Plaintiff suffered emotional and psychological injuries as a result of the Defendants' conduct.

48. Plaintiff has incurred medical expenses and medical-related expenses as a direct result of the Defendants' conduct.

## COUNT I:
## VIOLATIONS OF FREE SPEECH RIGHTS SECURED BY THE FIRST AMENDMENT (42 U.S.C. § 1983) AGAINST ALL DEFENDANTS

49. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

50. A violation of the First Amendment's right to free speech constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976).

51. Plaintiff criticized the film, *Desert Hearts*, in a paper written for her class taught by Defendant Hinkley at the University of New Mexico. Plaintiff was expelled as a result of her speech in the paper.

52. Defendants' expulsion of Plaintiff from her college course was an unlawful retaliation for Ms. Pompeo's exercise of rights secured by the First Amendment to the United States Constitution.

53. Defendants' expulsion of Plaintiff and restriction of Plaintiff's speech was pretextual and not in furtherance of a legitimate pedagogical concern.

54. Defendants' had no legitimate or lawful reason for the expulsion of Plaintiff, and their actions were based solely on their disagreement with Plaintiff's viewpoints and opinions.

55. Defendants are not entitled to qualified immunity.

56. Defendants' actions had and continue to have an unlawful chilling effect on Plaintiff's right to free speech secured by the First Amendment to the United States Constitution.

57. Defendants acted intentionally and/or with reckless indifference to Plaintiff's rights.

58. Defendants Hinkley and Dever acted willfully, maliciously, wantonly, oppressively, knowingly, in bad faith and with callous and reckless disregard for Plaintiff's constitutional rights.

59. Defendants' acts and omissions were the direct and proximate cause of harm to Plaintiff, including but not limited to: medical damages, embarrassment, humiliation, emotional distress, pain and suffering, and loss of constitutional rights.

60. Defendants' unlawful actions caused Ms. Pompeo harm and she is entitled to compensatory and special damages from Defendant UNM, compensatory, special and punitive

damages from Defendants Hinkley and Dever and such other relief that the Court deems appropriate.

**COUNT II:**
**VIOLATIONS OF FREE SPEECH RIGHTS SECURED BY THE FIRST AMENDMENT AGAINST ALL DEFENDANTS**
**(Declaratory Judgment Act, 28 U.S.C. §§ 2201-02)**

61. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

62. A violation of the First Amendment's right to free speech constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976).

63. Plaintiff criticized the film, *Desert Hearts*, in a paper written for her class taught by Defendant Hinkley at the University of New Mexico. Plaintiff was expelled as a result of her speech in the paper.

64. Defendants' expulsion of Plaintiff from her college course was an unlawful retaliation for Ms. Pompeo's exercise of rights secured by the First Amendment to the United States Constitution.

65. Defendants' expulsion of Plaintiff and restriction of Plaintiff's speech was pretextual and not in furtherance of a legitimate pedagogical concern.

66. Defendants' had no legitimate or lawful reason for the expulsion of Plaintiff, and their actions were based solely on their disagreement with Plaintiff's viewpoints and opinions.

67. Defendants are not entitled to qualified immunity.

68. Defendants' actions had and continue to have an unlawful chilling effect on Plaintiff's right to free speech secured by the First Amendment to the United States Constitution.

69. Defendants' acts and omissions were the direct and proximate cause of harm to Plaintiff, including but not limited to: medical damages, embarrassment, humiliation, emotional

distress, pain and suffering, and loss of constitutional rights.

70.     Defendants' unlawful actions caused Ms. Pompeo harm and she is entitled to a declaratory judgment, compensatory and special damages from Defendant UNM, compensatory, special and punitive damages from Defendants Hinkley and Dever, and such other relief that the Court deems appropriate under 28 U.S.C. § 2202.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff prays for judgment in her favor for:

A.  A declaratory judgment by the Court that Defendants' actions violated Plaintiff's rights secured by the First Amendment to the United States Constitution;

B.  Compensatory and special damages against all Defendants;

C.  Punitive damages against Defendants Hinkley and Dever in an amount sufficient to punish Defendants' misconduct and to deter future conduct;

D.  Costs, expenses and attorneys' fees;

E.   Post judgment interest; and

F.  Such other relief this Court deems just and proper.

## **JURY DEMAND**

Plaintiff, by and through her attorneys of record, Gorence & Oliveros, P.C., requests a trial by jury on all counts so triable.

            Respectfully submitted,

            GORENCE & OLIVEROS, P.C.

            */s/ Louren Oliveros  11/06/2013*
            Louren Oliveros
            Robert Gorence
            Andrea Harris
            1305 Tijeras Avenue N.W.
            Albuquerque, New Mexico  87102
            Telephone:  (505) 244-0214
            Facsimile:   (505) 244-0888
            E-Mail: oliveros@gopcfirm.com
               gorence@gopcfirm.com
               harris@gopcfirm.com
            *Attorneys for Plaintiff*

   I HEREBY CERTIFY that a true and correct copy of the First Amended Complaint was emailed by CM/ECF to all parties entitled to notice on this 6th day of November, 2013.

/s/ *Louren Oliveros 11/06/2013*
Louren Oliveros