IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


MONICA POMPEO,

       Plaintiff,

vs.                                                      Civ. No. 13-0833 MCA/CG

BOARD OF REGENTS OF
THE UNIVERSITY OF NEW MEXICO, *et al.*,

       Defendants.

## MEMORANDUM OPINION AND ORDER

       This case is before the Court upon Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (FAC) [Doc. 15]. The Court has considered the pleadings and is otherwise informed in the premises. The Motion will be denied.

       The Court concludes that the allegations of Plaintiff's FAC are sufficient to make out a plausible case that Defendants violated Plaintiff's First Amendment rights by subjecting Plaintiff to restrictions on speech that were not reasonably related to legitimate pedagogic concerns.

**Background**

       The University of New Mexico offered a class and Plaintiff enrolled in that class. The subject matter of the class ("Images of (Wo)men: From Icons to Iconoclasts") as set out in ¶¶ 12-13 of the FAC [Doc. 11 at 3] was chosen by the class instructor, Defendant Hinkley, to spark "incendiary" class discussions. The syllabus assured students that "it's quite clear that we do not expect anyone to necessarily agree with the positions and

1

arguments advanced in our work. There's controversy built right into the syllabus, and we can't wait to hash out our differences." One of the class assignments was to view the film *Desert Hearts*. Plaintiff, apparently taking Hinkley at her word as to the freewheeling character of the forum, submitted a four-page critique of the film *Desert Hearts* that was harshly critical of the lesbian characters portrayed in the film and of lesbianism in general. [Doc. 11 at 4, ¶ 18] Hinkley graded and returned the papers submitted by Plaintiff's classmates. However, ignoring representations in the syllabus concerning her openness to differing views, Hinkley refused to read beyond the first two pages of Plaintiff's critique, characterizing Plaintiff's views as inflammatory and offensive. Hinkley returned Plaintiff's critique without assigning a grade. At a subsequent meeting with Plaintiff, Hinkley accused Plaintiff of using "hate speech." Hinkley told Plaintiff that it would be in Plaintiff's best interest to drop the class. Due to Hinkley's hostility, including her refusal to assign a grade to Plaintiff's critique, Plaintiff withdrew from the "Images of (Wo)men" class.

**Standards Governing a Rule 12(b)(6) Motion to Dismiss**

Fed. Civ. P. Rule 8(a)(2) requires a complaint to set out "a short and plain statement of the claim showing that the pleader is entitled to relief." For decades, Rule 12(b)(6) motions were governed by a test taken from *Conley v. Gibson*, 355 U.S. 41 (1957). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Supreme Court retired *Conley*'s test, replacing it with the following test: "to withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d

1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 570).  In applying this test, a court accepts as true all "plausible, non-conclusory, and non-speculative" facts alleged in the plaintiff's complaint,.  *Shrader v. Al Biddinger*,  633 F.3d 1235, 1242 (10th Cir. 2011);  provided, that "the tenet that a court must accept as true all of the allegations contained in a complaint is in applicable to legal conclusions."  *Ashcroft v. Iqbal*,  556 U.S. 662, 679 (2009).  In short, in ruling on a Rule 12(b)(6) motion, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Collins*, 656 F.3d at 1214.

**Legal Standards Applicable to a Dispositive Motion Based on Qualified Immunity**

> Resolution of a dispositive motion based on qualified immunity involves a two pronged inquiry.  "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." "Second, . . . the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." "With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented." A reviewing court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (citations omitted).

**First Amendment Standards**

The Court's analysis of the merits of Plaintiff's First Amendment claim involves three questions:  (1) is Plaintiff speech protected speech? (2) in what type of forum did Plaintiff's speech occur? and (3) do the justifications for restricting speech proffered by

3

Defendants satisfy the First Amendment standard applicable to the type of forum in question. *Summum v. Callaghan*, 130 F.3d 906, 913 (10th Cir. 1997). Defendants bear the burden of establishing that the proffered justifications satisfy the applicable First Amendment standard. *Doe v. City of Albuquerque*, 667 F.3d 1111, 1120 (10th Cir. 2012). The first two inquiries are not seriously in dispute. Defendants concede that Plaintiff's speech is protected by the First Amendment and all parties agree that under governing Tenth Circuit precedent a university classroom is a nonpublic forum. *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1285 (10th Cir. 2004). As to the third inquiry, Defendants maintain that a university can restrict a student's curricular speech so long as the restrictions are reasonably related to legitimate pedagogical concerns. Plaintiff agrees with this standard, but with the caveat that "the 'existence of reasonable grounds for limiting access to a nonpublic forum will not save a regulation that is in reality a façade for viewpoint-based discrimination.'" Plaintiff's Response at 12 [Doc.19 at 12 (quoting *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 811 (1985)]. If this case involved a non-curricular nonpublic forum, the Court would be inclined to accept Plaintiff's caveat about viewpoint discrimination. See *Summum v. City of Ogden*, 297 F.3d 995, 1003 (10th Cir. 2002). But this case concerns curricular speech, and in this specific context the established general rule prohibiting viewpoint-based restrictions must yield to the Court of Appeals' conclusion that "*Hazelwood* does not require viewpoint neutrality." *Fleming v. Jefferson Sch. Dist. R-1*, 298 F.3d 918, 928-29(10th Cir. 2002). Viewpoint-based restrictions on a student's curricular speech are allowed, *but only if* they are reasonably related to legitimate pedagogical concerns.

**Plaintiff Has Adequately Pleaded a Violation of Her First Amendment Rights**

The First Amendment violation in this case arises from the irreconcilable conflict between the all-views-are-welcome description of the forum and Hinkley's only-those-views-with-which-I-personally-agree-are-acceptable implementation of the forum. Plaintiff has made out a case that no reasonable educator could have believed that by criticizing lesbianism, Plaintiff's critique fell outside the parameters of the class, given the description of the class set out in the syllabus.  This is not a case like *Brown v. Li*, 308 F.3d 939 (9th Cir. 2002), in which a student was given reasonable standards for accomplishing an assignment and consciously disregarded them.  Furthermore, the forum as described by the syllabus was designed for older students, who could be expected to have the emotional and intellectual maturity to deal with controversial or even invidious opinions.  *See Axson- Flynn*,  356 F.3d at 1289 (observing that "[a]ge, maturity, and sophistication level of the students will be factored in determining whether the restriction is 'reasonably related to legitimate pedagogical concerns'").

The Court questions whether a university can have a legitimate pedagogical interest in inviting students to engage in "incendiary" and provocative speech on a topic and then punishing a student because he or she did just that.  Simply because Plaintiff expressed views about homosexuality that some people may deem offensive does not deprive her views of First Amendment protection.  *See Boy Scouts of America v. Dale*, 530 U.S. 640, 660 (2000).  Plaintiff has made out a plausible case that Hinkley ostracized her because of Hinkley's personal disagreement with Plaintiff's ideology, and not for a legitimate pedagogical purpose.  *See Axson-Flynn*, 356 F.3d at 1292-93 (observing that "[the court]

5

would be abdicating [its] judicial duty if [it] failed to investigate whether the education goal or pedagogical concern was *pretextual*").

Plaintiff likewise has made out a plausible case against Defendant Dever, Hinkley's supervisor. Dever's warning to Plaintiff that Plaintiff would suffer "consequences" if Plaintiff continued to describe lesbianism as "barren," FAC, ¶ 37 [Doc. 11 at 7], supports Plaintiff's allegation that Dever "ratified" Hinkley's censorship of Plaintiff's views. Plaintiff has adequately alleged circumstances demonstrating that Dever (1) possessed responsibility for the continued operation of Hinkley's unconstitutional policy of censoring Plaintiff's speech, (2) Dever consciously perpetuated the policy of censorship, thereby causing the deprivation of Plaintiff's First Amendment rights, and (3) that Dever acted to suppress a viewpoint that she, like Hinkley, found personally offensive, rather than for a legitimate pedagogical reason. *See Dodds v. Richardson*, 614 F.3d 1185, 1199-1200 (10th Cir. 2010) (discussing elements of a post-*Iqbal* supervisory liability claim). Alternatively, Plaintiff has adequately alleged circumstances establishing that Dever independently violated Plaintiff's First Amendment rights while supervising the independent study course to which Plaintiff was assigned after being forced to withdraw from Hinkley's class.

The timing of Defendants' belated assertion that Plaintiff was "disruptive" and "disrespectful," together with Plaintiff's allegation that she had received A's or A-'s prior to her critique of *Desert Hearts*, support a plausible inference that these complaints about Plaintiff were pretextual.

**Plaintiff's First Amendment Rights Were Clearly Established**

The remaining question is whether Plaintiff's First Amendment rights were clearly established. *Axson-Flynn* clearly established that in the university setting, restrictions on school-sponsored speech must be justified "by 'legitimate' pedagogical concerns." 356 F.3d at 1300. Likewise, it was clearly established that views opposing homosexuality are protected by the First Amendment and that the government "is not free to interfere with speech for no better reason than promoting an approved message or discouraging a disfavored one, however enlightened either purpose may strike the government." *Boy Scouts*, 530 U.S. at 660 (quoting *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 579 (1995)) (quotation marks omitted). The Court concludes that Plaintiff's First Amendment rights were clearly established as of 2012, when the operative events are alleged to have occurred.

**WHEREFORE, IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 15] is **denied**.

So Ordered this 29th day of September, 2014.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge